AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

JUN 2 5 2019

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone 7 Plus (A1784)<br>IMEI: 356571080963440<br>Serial Number: FCMTQ1R4HG04 | )<br>)<br>) Case No.  19MJ2662<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine and Fentanyl |

The application is based on these facts:

See attached affidavit of HSI Special Agent Roberto Rospigliosi.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Roberto Rospigliosi, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/25/19

*Judge's signature*

City and state: San Diego, California        Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Roberto Rospigliosi, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960, as described in Attachment B:

   Apple iPhone 7 Plus (A1784)
   IMEI: 356571080963440
   Serial Number: FCMTQ1R4HG04
   (**Target Device**)

   This search supports an investigation and prosecution of Miguel PAREDES-Garcia for one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized on February 20, 2019 at the San Ysidro Port of Entry in San Diego, California. The **Target Device** was seized from Miguel PAREDES-Garcia pursuant to his arrest for importation of federally controlled substances. The **Target Device** is currently stored as evidence at the HSI evidence vault at 2297 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed

1

from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with HSI and have been so employed since November 2010. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to a Document and Benefit Fraud Task Force in San Diego, California. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code. Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities. Based on my training and experience, as well as my consultations with other law enforcement personnel, I have learned that drug traffickers commonly use electronic devices such as cellular telephones, and computers to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in

order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the

      presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of cellular/mobile telephones by drug smugglers tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular/mobile telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, based

upon my training, education, and experience that searches of cellular/mobile telephones associated with narcotics smuggling investigations yield evidence:

a. tending to identify attempts to import fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On February 20, 2019 at approximately 11:30 a.m., Miguel PAREDES-Garcia applied for entry into the United States at the San Ysidro, CA Port of Entry (POE) as the driver and registered owner of a 2003 Ford Explorer.

11. While assigned to primary lanes, Customs and Border Protection Officer (CBPO) Park received a negative oral Customs Declaration from

5

1  PAREDES. CBPO Park received a computer-generated alert for the vehicle and
2  referred it to vehicle secondary for inspection. In secondary, CBPO Alves screened
3  the vehicle using the Z-Portal X-Ray and noticed anomalies in the dashboard area of
4  the vehicle.

5      12. Also in secondary inspection, CBPO Ramon utilized his Human and
6  Narcotics Detection Dog (HNDD) to screen the vehicle. CBPO Ramon's HNDD
7  alerted to the dashboard area of the vehicle.

8      13. CBPO S. Mackey then inspected the vehicle and removed the
9  dashboard, revealing seven (7) packages wrapped in brown plastic and four
10 (4) packages wrapped in clear plastic. One package wrapped in brown plastic was
11 probed and field-tested positive for fentanyl. One package wrapped in clear plastic
12 was probed and field-tested positive for methamphetamine. A total of seven
13 (7) packages were removed from the vehicle's dashboard, with a total weight of
14 approximately 7.52 kilograms (16.54 pounds) of fentanyl. A total of four
15 (4) packages were removed from the vehicle's dashboard, with a total weight of
16 approximately 1.84 kilograms (4.04 pounds) of methamphetamine. PAREDES was
17 placed under arrest for violation of Title 21, United States Code, Sections 952 and
18 960, Importation of a Controlled Substance.

19      14. The **Target Device** was seized incident to PAREDES's arrest.

20      15. During his post-arrest interview, PAREDES agreed to waive his
21 *Miranda* rights and speak to SAs Rospigliosi and Vazzana. PAREDES
22 acknowledged that he owned the **Target Device** with phone number 664-568-2177.
23 PAREDES also stated he had no knowledge of the narcotics being in his vehicle.

1  PAREDES gave agents consent to search the **Target Device** and provided them with the passcode, 664495.[1]

2  16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that PAREDES likely used the **Target Device** to coordinate the importation of federally controlled substances into the United States. In addition, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information may be stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of PAREDES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**.

17. Finally, I also have learned that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the **Target Device** for items listed in Attachment B beginning on November 20, 2018, up to and including February 20, 2019.

---

[1] On February 20, 2019, agents examined some of the **Target Device**'s contents. In an abundance of caution, I ask the court not to consider information agents may or may not have seen during that examination in determining whether there is probable cause for the requested warrant.

7

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" or "airplane mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard-drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that PAREDES used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Device** was promptly seized during the investigation of PAREDES's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by PAREDES continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from November 20, 2018, through February 20, 2019.

//
//
//
//
//
//
//
//
//
//
//
//

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Roberto Rospigliosi
HSI Special Agent

Subscribed and sworn to before me this __25__ day of June, 2019.

HON. BARBARA L. MAJOR
United States Magistrate Judge

10